IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMILIO CARRILLO and <br> MICHELLE ANN CARRILLO, <br><br> Plaintiffs, <br><br> vs. <br><br> BRENDAN MORTGAGE, INCORPORATED, <br> doing business as BRENDAN FINANCIAL; <br> SCOTT ROBERT BARFUSS; <br> FATHER & SONS HOME <br> IMPROVEMENT II, INCORPORATED; <br> NANCI MARTINEZ; and <br> FCI LENDER SERVICES, INC.; <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

1. Plaintiffs Emilio Carrillo and Michelle Ann Carrillo bring this action to secure redress for a home improvement fraud scheme. The Defendants are (a) Brendan Mortgage, Incorporated, doing business as Brendan Financial; (b) Scott Robert Barfuss; (c) Father & Sons Home Improvement II, Incorporated; (d) Nanci Martinez; and (e) FCI Lender Services, Inc.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 15 U.S.C. §1640 (Truth in Lending Act), 15 U.S.C. §1692k (Fair Debt Collection Practices Act), 18 U.S.C. §1964 (RICO), 28 U.S.C. §1331 (general federal question), and 28 U.S.C. §1367 (supplemental jurisdiction).

3. Venue in this District is proper because the action concerns real estate in the City of Chicago and all of the events at issue occurred here.

4. This Court has personal jurisdiction over each Defendant because they are located in this District and sought to enforce a debt secured by real estate in the City of Chicago.

**PARTIES**

5. Plaintiffs Emilio Carrillo and Michelle Ann Carrillo are husband and wife and reside in a home which they own in Chicago, Illinois. Emilio Carrillo is a Chicago police officer, and Michelle Carrillo is a teacher with the Chicago Public Schools.

6. Defendant Brendan Mortgage, Incorporated ("Brendan Mortgage") is an Illinois corporation which does business as Brendan Financial. Its principal office is located at 30 East Avenue, Suite A, Riverside, IL 60546. Its registered agent is Scott Robert Barfuss at that address. Barfuss is also its president and secretary, and has complete control over its policies, practices, and documentation. Between 2017 and 2021, its president and secretary was Michael R. Collins, and a majority of the stock was owned by Carol Kafka.

7. Defendant Brendan Mortgage extends credit secured by real estate to more than five persons per year.

8. Defendant Brendan Mortgage holds security interests in more than 100 residential properties in Illinois.

9. Defendant Father & Sons Home Improvement II, Incorporated ("Father & Sons II") is an Illinois corporation with its principal place of business at 28 East Avenue, Riverside, Illinois 60456. Its president, secretary and registered agent is Nanci Martinez at that address.

10. Defendant Nanci Martinez had complete control over the business practices and documentation of Father & Sons II. She may be found at 28 East Avenue, Riverside, Illinois 60456, or 3539 S. 58th Ave., Cicero, IL 60804-4240.

11. Nanci Martinez was personally involved in the dealings between Father & Sons II and Plaintiffs.

12. Defendant Scott Robert Barfuss ("Barfuss") is an Illinois attorney. His registered

address with the Attorney Registration and Disciplinary Commission is 1165 Hull Court, Aurora, Illinois 60504-5835.

13. In addition to being the sole officer of Brendan Mortgage, Barfuss regularly acts as attorney for Father & Sons II, doing so in at least *Thigpen v. Father & Sons Home Improvement II, Inc. (In re Thigpen),* Nos. 12bk50810, 13ap01060, 2014 Bankr. LEXIS 1127 (Bankr. N.D. Ill. Mar. 20, 2014); *Brendan Financial v. Kemp,* 15 CH 8338 (Cir. Ct. Cook County); *Ollie L Evans,* 16bk20492 (Bankr. N.D.Ill.); and *Sandra Wilson,* 15bk28109 (Bankr. N.D.Ill.).

14. Father & Sons II regularly refers business to Brendan Mortgage. Other such instances besides Plaintiffs are documented in *Michelle Kemp vs. Father and Sons Home Improvement II, Inc. and Brendan Financial,* 2017 L 004846 (Cir. Ct. Cook County); *Sherry Gayle Coleman,* 18bk11813 (Bankr. N.D.Ill.); amended complaint, *U S Bank N.A. vs. Alvin McDaniel,* 2017 CH 13925 (Cir. Ct. Cook County).

15. Both Father & Sons II and Brendan Mortgage were originally founded by Ronald W. Kafka, Sr., and members of his family. Ronald W. Kafka, Sr., has a long history of home repair fraud, conducted through various entities. See *People of the State of Illinois v. Kafka*, 2006-CH-08658 (Cir. Ct. Cook County), aff'd, *People v. Kafka*, 2012 IL App (1st) 102880-U; *People ex rel. Hartigan v. Kafka & Sons Bldg. & Supply Co.,* 252 Ill. App. 3d 115, 625 N.E.2d 16 (1st Dist. 1993). On information and belief, Carol Kafka, owner of a majority of Brendan Mortgage, is the wife of Ronald W. Kafka, Sr.

16. Defendant FCI Lender Services, Inc. ("FCI") is a California corporation with its principal place of business at 8180 E. Kaiser Blvd., Anaheim Hills, CA 92808. It does business in Illinois. Its registered agent and office is Cogency Global Inc., 600 South Second St., Suite 404, Springfield, IL 62704-2542.

17. FCI is engaged in the business of servicing residential mortgages.

18. FCI seeks and obtains certification as a residential special servicer, which is mortgage industry argot for a servicer that specializes in handling delinquent or defaulted loans, as opposed to performing loans. For example, at the end of 2013 - beginning of 2014, it received a ratings upgrade when Morningstar Credit Ratings increased its 'residential special servicer ranking' to 'MOR RS2' from 'MOR RS3.'

19. FCI regularly collects for others consumer debts, namely residential mortgage loans, which are purportedly delinquent or in default when FCI first becomes involved with them.

## FACTS

20. On November 5, 2019, Plaintiffs signed a contract with Father & Sons II for the construction of a second floor addition to Plaintiffs' home (Appendix A) and gave Father & Sons II a down payment of $2,500. Plaintiffs wanted the addition to provide more space for their minor daughter.

21. Plaintiffs were told the addition would take about three months to construct, but weather and other issues might cause it to take slightly longer. Plaintiffs were also told they would not need to start making payments (apart from the initial down payment) until work was started on the project.

22. Appendix A recites in the fine print on the reverse that "R. Kafka is associated with the Contractor as a sales agent and not an owner."

23. Father & Sons II had Plaintiffs sign financing documents with Brendan Mortgage in connection with the transaction.

24. On January 24, 2020, Plaintiffs and Brendan Mortgage signed, among other things:

    a. A note (Appendix B);

    b.  A second mortgage (Appendix C) in the amount of $131,705.75,

    c.  A Construction Loan Agreement (Appendix D).

  25.  Of the $131,705.75, $5,250 went toward loan origination, processing and underwriting fees. (Closing Disclosure, Appendix E, and Settlement Statement, Appendix F)

  26.  Several of the documents listed the purpose of the loan as "refinance" even when it was clearly a construction loan, and "construction" was one of the options. The loan was not a refinance transaction.

  27.  Michael Collins is listed as the loan originator on the note.

  28.  The Construction Loan Agreement (Appendix D) purported to state (p. 2, §2.1.7) that "I have full and sole responsibility to make sure that the Work complies with the Plans and all Government Regulations. Lender is not liable for any failure to construct, complete, protect, or insure the Work . . . . I have no right to assert or claim any offset, counterclaim or defense against Lender because of any claim I may have against Contractor or any Suppliers."

  29.  As set forth below, the quoted provisions are unlawful. They are especially problematic given the fact that Brendan Mortgage was connected with Father & Sons II and well aware of its propensity for fraud and shoddy work.

  30.  The Construction Loan Agreement provided a proposed schedule for payments to the contractor (Exhibit B to Appendix D), which provided that 20% would be paid up front, 40% would be paid upon commencement of the work, 30% would be paid at the half way point "rough framing and under roof" and the final balance of $12,350 would be paid upon completion.

  31.  The Construction Loan Agreement had a series of documents entitled "Requests for Advance" attached to it, all of which were signed at the same time as the Agreement, January 24, 2020.

32. As set forth below, the signing of these Requests for Advance was unlawful.

33. All of these documents are form documents regularly used by Brendan Mortgage.

34. Between January 24, 2020 and February 29, 2020, Brendan Mortgage appears to have disbursed at least $98,880 to Father & Sons II. (Appendix G) This was done even though that sum is listed as a "construction holdback" on Appendix E and Appendix F, implying that it would not be disbursed until work was done. Payment in this amount was also contrary to the language and payment schedule in the Construction Loan Agreement. Plaintiffs were unaware this had been done at the time, and did not authorize any such disbursements.

35. No work had been done when the money was disbursed.

36. Plaintiffs had not signed any certificate stating that any work had been done.

37. Brendan called the Carrillos on one occasion requesting payments on the loan, and Plaintiffs told them they would not pay because no work had been started on the addition.

38. It is the standard practice of Brendan Mortgage and Father & Sons II to have Brendan Mortgage disburse funds to Father & Sons II without a completion certificate.

39. Because Father & Sons II regularly refers consumers for financing to Brendan Mortgage, the loan documents were required to contain a notice prescribed by the Federal Trade Commission rule abrogating the holder in due course doctrine, 16 C.F.R. part 433. This required notice ("FTC notice") states:

> NOTICE   ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

40. Brendan Mortgage's form loan documents did not contain the FTC notice.

41. The FTC notice is contrary to the statements in the Construction Loan Agreement

(Appendix D) that (p. 2, §2.1.7) "I have full and sole responsibility to make sure that the Work complies with the Plans and all Government Regulations. Lender is not liable for any failure to construct, complete, protect, or insure the Work . . . . I have no right to assert or claim any offset, counterclaim or defense against Lender because of any claim I may have against Contractor or any Suppliers."

42. It is the standard practice of Father & Sons II and Brendan Mortgage to omit the FTC notice from loan documents involving the financing of home improvements to be performed by Father & Sons II.

43. It is the standard practice of Father & Sons II and Brendan Mortgage to use a Construction Loan Agreement that contradicts the FTC notice.

44. The omitting of the notice and the contrary statements in the Construction Loan Agreement were part of a deliberate attempt to collect money from consumers notwithstanding the absence of competent, or any, performance.

45. In June, 2021, Father & Sons II informed Plaintiffs that they were ready to start work and were ordering lumber, and had dumpsters and a crew lined up. They told Plaintiffs to prepare their house for the construction, so Plaintiffs packed up a lot of their belongings to get them out of the way.

46. On June 22, 2021, Plaintiffs and Brendan Mortgage signed a loan modification (Appendix H, attached) which superseded the original note. The modification was intended to cover some additional work that was added to the contract, including repairing a basement crack. The modification agreement increased the loan principal by $9,875 to $140,946.75 and provided for payments beginning August 1, 2021. It was notarized by Donna J. DiBrito, who was the sole officer of Father & Sons Contractors, Inc., and Father & Sons Improvement Company, which companies

conducted the Kafka home improvement business prior to Father & Sons II.

47. No Truth in Lending disclosures were provided in connection with the June 22. 2021 transaction.

48. Plaintiffs were not provided notice of their right to rescind the June 22, 2021 transaction.

49. The loan modification documents did not contain the FTC notice.

50. No work was ever performed by Father & Sons II for Plaintiffs at any time between November 2019 and the present. The Carrillos had to pay to have the basement crack repaired by somebody else because the crack was causing flooding.

51. The City of Chicago refused to approve permit applications submitted by Father & Sons II, finding deficiencies in the plans.

52. When Plaintiffs complained about the delays with the project in emails and by phone, Nancy Martinez and others at Father & Sons II sent communications to Plaintiffs purporting to provide explanations for the delays and the failure to approve the permit applications.

53. Plaintiffs contacted their Alderman about the permit issues, who investigated and told them the contractor was to blame for the situation.

54. Plaintiffs have given notice of their election to rescind by letters of January 4, 2022 (Appendix I) and December 8, 2023 (Appendix J).

55. Plaintiffs sent the January 4, 2022 letter because no work had been done.

56. Plaintiffs' minor daughter is now close to going to college, so the lengthy delays have frustrated the initial purpose of the project – to provide a larger play and study space for her, and Mr. Carrillo feels like he let his daughter down. The continued delays have caused extensive stress and anxiety for the Carrillo family.

57. As of January 4, 2022, Plaintiffs had not made payments on the modified loan.

58. Father & Sons, II and Brendan Mortgage have not honored Plaintiff's request to rescind the transaction.

59. Effective May 1, 2023, Brendan Mortgage purported to transfer servicing of Plaintiffs' loan to FCI with a letter dated April 11, 2022. (Appendix K)

60. Plaintiffs received the notice of the transfer (Appendix K), directing payments to FCI, in the mail.

61. As of May 1, 2023, the loan was purportedly in default, no payments having been made on August 1, 2021 or thereafter.

62. FCI has been demanding payment of the loan on behalf of Brendan Mortgage. (Appendix L, Appendix M)

63. Plaintiffs received Appendix L and Appendix M in the mail.

64. FCI claims a right to receive payments on account of the loan.

65. FCI claims that it has a right to foreclose (Appendix N).

66. Plaintiffs received Appendix N in the mail.

67. Plaintiffs suffered emotional distress at receiving documents threatening foreclosure on a transaction from which they received no benefit.

68. Plaintiff also suffered damage in the following respects:

    a. They had to pay counsel to deal with Defendants' fraud and threats;

    b. They are purportedly obligated on a credit agreement, for which they obtained nothing;

    c. Their property is encumbered by a mortgage, in exchange for which they obtained nothing;

       d.       They received nothing for their down payment;

       e.       They need additional space in their home. They did not get it from Defendants, and Defendants' mortgage precludes them from getting it from anyone else.

       f.       They suffered flooding in their basement, and had to pay somebody else to fix the crack Father & Sons II was supposed to promptly repair.

## COUNT I -- TILA – RESCISSION

69. Plaintiffs incorporate paragraphs 1-68.

70. This claim is against Brendan Mortgage and FCI.

71. Plaintiffs are entitled to rescind the June 22, 2021 agreement.

72. FCI claims a right to collect money on account of the agreement or to foreclose if the money is not paid.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendants:

       a.       Cancelling all credit agreements and security interests with Brendan Mortgage, in a form recordable in the real estate records;

       b.       Declaring that FCI and Brendan Mortgage are not entitled to collect anything from Plaintiffs;

       c.       Awarding statutory damages;

       d.       Awarding attorney's fees, litigation expenses and costs of suit;

       e.       Providing such other or further relief as is proper.

## COUNT II – FDCPA

73. Plaintiffs incorporate paragraphs 1-68.

74. This claim is against FCI.

75. FCI is a debt collector as defined by 15 U.S.C. §1692a(6), in that it (a) regularly collects residential mortgage loans owed to others (b) which are delinquent or in default when it first becomes involved with them, as part of its special servicing business.

76. FCI knew or should have known that there was a problem with the loan it was undertaking to collect, in that it undertook to collect a loan on which neither the first payment nor any other payments had been made under the modified loan, for a period of nearly two years. Any inquiry into the reasons would have revealed the dispute with Plaintiffs. Any inquiry into the background of Father & Sons II or Brendan Mortgage would have revealed the extensive problems with the Kafka companies.

77. FCI engaged in unfair and deceptive debt collection practices, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(10) and 1692f, by:

    a. Demanding payment of a fraudulent debt which was not legally owed;

    b. Threatening to foreclose on Plaintiffs' home for nonpayment of such debt.

78. Section 1692e provides:

False or misleading representations
A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(2) The false representation of—

    (A) the character, amount, or legal status of any debt; . . .

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

79. Section 1692f provides:

Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .

80. FCI also failed to provide the "notice of debt" required by 15 U.S.C. §1692g, which contains instructions to the consumer as to how to dispute a debt which is not valid.

81. Section 1692g(a) provides:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. . . .

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendant FCI:

a. Awarding actual damages;

      b.      Awarding statutory damages;

      c.      Awarding attorney's fees, litigation expenses and costs of suit;

      d.      Providing such other or further relief as is proper.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

82. Plaintiffs incorporate paragraphs 1-68.

83. This claim is against all Defendants.

84. Defendants, acting in concert, engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by:

      a.      Causing payment to be made to Father & Sons II by Brendan Mortgage on transactions resulting from the referral of business by Father & Sons II to Brendan Mortgage, where the FTC notice was omitted from the loan documents, and contrary provisions included in the Construction Loan Agreement;

      b.      Performing no work, as part of a pattern of performing no work or defective work on home improvement transactions;

      c.      Demanding payment and threatening foreclosure where no work had been performed;

      d.      Disbursing loan proceeds without a signed completion certificate, a practice prohibited by 815 ILCS 135/1 et seq., a statute which expresses the public policy of Illinois;

      e.      Failing to provide Truth in Lending disclosures and notice of the right to cancel in connection with the June 22. 2021 transaction.

      f.      Refusing to cancel the transaction;

    g.  Failing to provide a "notice of debt" as required by the FDCPA.

85. Defendants engaged in such conduct in the course of trade and commerce in home improvements and financial services.

86. Defendants engaged in such conduct as part of a pattern and practice of home improvement fraud, for the purpose of swindling Plaintiffs.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendants:

    a.  Awarding actual damages;

    b.  Awarding punitive damages;

    c.  Cancelling Plaintiffs' transactions with Defendants;

    d.  Declaring that Defendants are not entitled to any money from Plaintiffs;

    e.  Awarding attorney's fees, litigation expenses and costs of suit;

    f.  Providing such other or further relief as is proper.

## COUNT IV – RICO

87. Plaintiffs incorporate paragraphs 1-68.

88. This claim is against Defendants Father & Son II, Brendan Mortgage, Barfuss, and Martinez, who are the RICO "persons."

89. Defendants Father & Son II and Brendan Mortgage together constitute an "enterprise," being associated in fact for the purpose of financing home improvement transactions.

90. The enterprise was formed at least ten years ago, and continues to the present.

91. It is the standard practice of Defendants to disburse loans made to fund home improvements upon the signing of loan documents, before the completion of work, and without a completion certificate having been signed.

92. It is the standard practice of Defendants to omit the FTC notice from loan documents resulting from the referral of business by Father & Son II to Brendan Mortgage, and to include contrary provisions in the Construction Loan Agreement.

93. It is the standard practice of Defendants to have monthly statements and notices calling for payment mailed to consumers on such loans.

94. The enterprise engaged in interstate commerce, in that:

    a. The materials used in home improvement projects come in part from outside Illinois;

    b. Out of state entities such as FCI are used to obtain payment;

    c. The mails and other instrumentalities of interstate commerce are used to obtain payment.

95. Each of the Defendants named herein violated 18 U.S.C. §1962(c), in that, while associated with the enterprise in fact described above, they conducted or participated in the conduct of such enterprise's affairs through a pattern of mail fraud, as defined in 18 U.S.C. §1341.

96. The fraud consisted of:

    a. Representing to numerous consumers that they had to pay notwithstanding poor or no work, by omitting the FTC notice and including contrary provisions in the Construction Loan Agreement;

    b. Funding loans for home improvements immediately upon execution of loan documents, prior to the completion of work, and without the required completion certificate.

97. 18 U.S.C. §1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate,

-15-

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

98. 18 U.S.C. §1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. . . . .

99. Mailings used in connection with the fraud complained of include:

    a. Demands for payment;

    b. Documents referencing foreclosure.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and against Defendants for:

    i. Actual damages;

    ii. Treble damages;

    iii. Attorney's fees, litigation expenses and costs of suit;

    iv. Such other and further relief as the Court deems proper.

## COUNT V – RICO

100. Plaintiffs incorporate paragraphs 1-68.

101. This claim is against Defendant Barfuss, who is the RICO "person."

102. Defendant Brendan Mortgage constitutes an "enterprise," in that it is a corporate entity.

103. The enterprise was formed at least ten years ago, and continues to the present.

104. It is the standard practice of Defendant to disburse loans made to fund home improvements upon the signing of loan documents, before the completion of work, and without a completion certificate having been signed.

105. It is the standard practice of Defendant to omit the FTC notice from loan documents resulting from the referral of business by Father & Son II to Brendan Mortgage and include contrary provisions in the Construction Loan Agreement.

106. It is the standard practice of Defendant to have monthly statements and notices calling for payment mailed to consumers on such loans.

107. The enterprise engaged in interstate commerce, in that:

    a. The materials used in home improvement projects come in part from outside Illinois;

    b. Out of state entities such as FCI are used to obtain payment;

    c. The mails and other instrumentalities of interstate commerce are used to obtain payment.

108. Defendant named herein violated 18 U.S.C. §1962(c), in that, while associated with the enterprise in fact described above, he conducted or participated in the conduct of such enterprise's affairs through a pattern of mail fraud, as defined in 18 U.S.C. §1341.

109. The fraud consisted of:

    a. Representing to numerous consumers that they had to pay notwithstanding poor or no work, by omitting the FTC notice and including contrary provisions in the Construction Loan Agreement;

    b. Funding loans for home improvements immediately upon execution of loan documents, prior to the completion of work, and without the required

completion certificate.

110. 18 U.S.C. §1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

111. 18 U.S.C. §1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. . . . .

112. Mailings used in connection with the fraud complained of, include:

    a. Demands for payment;

    b. Documents referencing foreclosure.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and against Defendant for:

    i. Actual damages;

    ii. Treble damages;

    iii. Attorney's fees, litigation expenses and costs of suit;

    iv. Such other and further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 62970473)
Julia Ozello (ARDC 6336504)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## JURY DEMAND

Plaintiffs demand trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

T:\40305\Pleading\Complaint DAE 12-5-23 ver 2_Pleading.WPD

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
**EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)